**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARROL LONGSHORE,　　　　　　　　　　　　 Plaintiff, <br><br> - v - <br><br> GS INSTITUTE, INC. and GODDESS STALLINGS, <br><br>　　　　　　　　　　　　　　　Defendants. | Civil Action No.: 25-cv-2798 <br><br> **COMPLAINT** <br><br> *Jury Trial Demanded* |

　　　　Plaintiff Dr. Carrol Longshore ("Dr. Longshore"), by and through his undersigned attorney, brings this Complaint against Defendants GS Institute, Inc. ("GS Institute") and Goddess Stallings ("Stallings"), and alleges as follows:

### PRELIMINARY STATEMENT

　　　　1.　　This is an action for breach of contract, unpaid wages, unlawful deductions from wages, untimely payment of wages, failure to provide wage notice, and wage-complaint retaliation in violation of the New York Labor Law ("NYLL") and the Fair Labor Standards Act (FLSA).

### JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS

　　　　2.　　The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. The Court also has jurisdiction pursuant to 29 U.S.C. § 216(b).

　　　　3.　　The Court has supplemental jurisdiction over Dr. Longshore's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

　　　　4.　　Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this

district, and Defendants reside or conduct business in this district.

## PARTIES

5. Dr. Longshore is a resident of the State of New York and is employed by GS Institute as a licensed psychiatrist.

6. At all relevant times, Dr. Longshore was an "employee" of Defendants under the FLSA and the NYLL.

7. GS Institute is a domestic corporation registered in New York and doing business throughout the State.

8. GS Institute, Inc. is an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1) because it has, upon information and belief, annual gross revenues in excess of $500,000 and engages in interstate commerce.

9. GS Institute, Inc. employs Plaintiff and was at all relevant times an "employer" under the FLSA.

10. GS Institute maintains its principal place of business at 190 Mirin Avenue, Roosevelt, New York 11575.

11. Defendant Stallings was at all relevant times the owner and managing member of GS Institute.

12. In this role, Stallings exercised sufficient operational control over GS Institute, Inc., including determining employees' rates of pay and making hiring or firing decisions, to be an "employer" of Plaintiff under the FLSA.

13. She had the ability to affect the terms and conditions of Dr. Longshore's employment by, among other things, assigning his work, overseeing his work, evaluating his performance and providing feedback, and terminating his employment.

14. Upon information and belief, Stallings resides in New York.

15. At all relevant times, Defendants were Dr. Longshore's "employer" under the FLSA and the NYLL.

## FACTUAL BACKGROUND

16. Dr. Longshore received a B.S. from Furman University in 1972 and a M.D. from the Medical University of South Carolina in 1976.

17. Dr. Longshore had approximately 41 years of related experience when he joined GS Institute.

18. In or about October 2022, GS Institute offered Dr. Longshore the position of Psychiatrist.

19. At the time of hire, Defendants promised Plaintiff an annual salary of $115,000, payable bi-weekly.

20. Dr. Longshore performed services remotely from his New York residence.

21. Defendants never provided Dr. Longshore a written wage-rate notice as required by New York Labor Law § 195(1).

22. From October 2022 through April 2023 Defendants paid Dr. Longshore on a bi-weekly schedule.

23. In May 2023 Defendants told Dr. Longshore they were experiencing "financial difficulty" and would pay him only once a month "until they got caught up."

24. Between May 2023 and December 2023 Defendants paid Dr. Longshore approximately ninety-thousand dollars ($90,000), leaving at least twenty-five thousand dollars ($25,000) of 2023 salary unpaid.

25. Beginning in or around early 2024, Defendants began failing to pay Plaintiff his

full salary.

26. Plaintiff worked multiple workweeks during which he received either no pay or only a drastically reduced portion of his salary, despite continuing to perform work for Defendants during those weeks.

27. For example, during the workweek of January 8, 2024, Plaintiff worked approximately 20 hours but received no wages for that week at all.

28. During the following workweek of January 15, 2024, Plaintiff again worked about 20 hours but was paid only $100 for the entire week.

29. During the workweek of January 22, 2024, Plaintiff worked approximately 20 hours and was paid only $50 for that week.

30. The wages Plaintiff received for many workweeks, including those identified above, were far below the federal minimum wage.

31. Defendants failed to pay Plaintiff tens of thousands of dollars in earned salary in 2024.

32. Dr. Longshore emailed Defendants stating he would retire if his unpaid wages were not brought current.

33. In response, Defendants began sending partial payments of about $1,500 twice a month, far below the promised bi-weekly salary.

34. As of June 30, 2024, Defendants owed Dr. Longshore at least sixty-seven thousand dollars ($67,000) in unpaid wages.

35. Defendants did not furnish accurate wage statements with each payment, and sometimes provided none at all.

36. Defendants' unilateral shift from bi-weekly to sporadic or monthly payments

deprived Dr. Longshore of timely wages as required by New York Labor Law § 191.

37. When Dr. Longshore complained about unpaid wages, Defendants, through Stallings, threatened to report him to professional organizations for "abandoning patient care."

38. The threat together with the partial-payment schedule followed Dr. Longshore's wage complaint and was motivated by it.

39. Upon information and belief, Defendants applied the same late-payment practice to other employees.

40. In 2022 and 2023, Defendants classified Plaintiff as an employee and issued him IRS Form W-2s for those years, reflecting his wages and withholdings as an employee.

41. However, in 2024, despite no changes in Plaintiff's job duties or role, Defendants reclassified Plaintiff as an independent contractor and issued him an IRS Form 1099 for 2024.

42. This reclassification was unilateral and was not based on any change in the nature of Plaintiff's work.

43. Prior to issuing Dr. Longshore the Form 1099, Defendants never informed Dr. Longshore that they would be classifying him as an independent contractor.

44. Plaintiff's work in 2024 was identical in nature to his work in 2022 and 2023.

45. He continued to report to the same supervisors, perform the same tasks, and work the same schedule under Defendants' direction and control.

46. The only difference was that Defendants stopped treating him as a W-2 employee and instead treated him as a 1099 independent contractor, thereby ceasing to withhold taxes and not providing the protections and benefits afforded to employees.

47. Throughout his employment, Plaintiff did not operate a separate business, did not have the opportunity for profit or loss beyond his salary, and used tools and equipment provided

or controlled by Defendants.

48. Defendants directed Plaintiff's work hours, job duties, and how he was to perform his work.

## FIRST CAUSE OF ACTION
### (Retaliation in Violation of FLSA § 215 (a)(3))
*Against All Defendants*

49. Dr. Longshore repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

50. The aforementioned facts and circumstances described above constitute unlawful retaliation under the FLSA.

51. As a direct and proximate result of the unlawful employment practices of Defendants, Dr. Longshore has suffered and continues to suffer damages, including unpaid wages.

52. Defendants' actions were willful and entitle Plaintiff to legal and equitable relief, including liquidated damages, under 29 U.S.C. § 216(b).

53. Defendants' threats of disciplinary reports and the immediate reduction to partial payments constitute adverse actions that would deter a reasonable employee from asserting federally protected minimum-wage and overtime rights.

54. A causal connection exists because the threats and reductions followed within weeks of Dr. Longshore's wage complaint.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of the NYLL)
*Against All Defendants*

55. Dr. Longshore repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

56. Dr. Longshore engaged in protected activity under NYLL § 215 by complaining in writing about unpaid wages.

57. Defendants thereafter reduced his pay and threatened professional discipline, constituting retaliation prohibited by NYLL § 215.

58. As a result, Dr. Longshore suffered economic loss and emotional distress and is entitled to unpaid and lost wages, costs, and reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
### (Untimely and Incomplete Wage Payments in Violation of
### NYLL §§ 191, 195(3), and 198(1-a))
*Against All Defendants*

59. Dr. Longshore repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

60. Throughout the period covered by the applicable statute of limitations, Defendants knowingly failed to pay Dr. Longshore his wages at minimum biweekly.

61. Defendants' conduct was willful and lasted for the duration of the relevant time period.

62. Defendants' conduct was in violation of NYLL § 191.

63. Due to Defendants' violations of the NYLL, Dr. Longshore is entitled to recover from Defendants, jointly and severally, liquidated damages equal to the wages, together with costs and attorneys' fees.

### FOURTH CAUSE OF ACTION
### (Unlawful Deduction from Wages in Violation of the NYLL)
*Against All Defendants*

64. Dr. Longshore repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

65. Defendants' failure to remit Dr. Longshore's earned wages constitutes unlawful

deductions and/or non-payment within the meaning of NYLL § 193.

66. Defendants' withholding of Dr. Longshore's wages was willful and done in bad faith. Accordingly, Dr. Longshore is entitled to liquidated damages equal to 100% of the unpaid wages due and owing to him pursuant to NYLL § 198(1-a).

67. As a direct and proximate result of Defendants' breaches of the NYLL, Dr. Longshore has been damaged in an amount to be determined at hearing, and is entitled to an award of liquidated damages, attorney's fees, and prejudgment interest owed in connection with these violations.

## FIFTH CAUSE OF ACTION
### (Failure to Provide Wage Notice in Violation of the NYLL)
*Against All Defendants*

68. Dr. Longshore repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

69. Defendants failed to furnish a wage notice within ten business days of hire stating rate of pay, overtime rate (if applicable), and regular payday.

70. As a result, Dr. Longshore is entitled to statutory damages of $50 per workday, up to $5,000, plus costs and attorneys' fees.

## SIXTH CAUSE OF ACTION
### (Failure to Provide Wage Statements in Violation of the NYLL)
*Against All Defendants*

71. Dr. Longshore repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

72. Defendants failed to supply accurate wage statements with each payment showing hours worked, rates, deductions, and net wages.

73. As a result, Dr. Longshore is entitled to statutory damages of $250 per workday,

up to $5,000, plus costs and attorneys' fees.

### SEVENTH CAUSE OF ACTION
### (Breach of Contract)
*Against Defendant GS Institute, Inc.*

74. Dr. Longshore repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

75. Defendant entered a contract to pay Dr. Longshore $115,000 annually.

76. Defendant materially breached that agreement by short-paying and delaying salary beginning May 2023.

77. Dr. Longshore suffered economic damages, plus interest, as a direct result of the breach.

### EIGHTH CAUSE OF ACTION
### (Failure to Pay Minimum Wage in Violation of the FLSA, 29 U.S.C. §§ 206, 207)
*Against All Defendants*

78. Dr. Longshore repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

79. Defendants failed to compensate Dr. Longshore at any rate for the work weeks identified above and paid less than his promised salary in numerous other weeks, causing his effective hourly rate to fall below the federal minimum wage for many pay periods.

80. Because Defendants ceased paying him on a salary basis after May 2023, any professional exemption under 29 C.F.R. § 541.300 was forfeited.

81. Defendants' issuance of a Form 1099-NEC and cessation of payroll withholdings are further evidence that they willfully misclassified Dr. Longshore.

82. Defendants' conduct was willful within the meaning of 29 U.S.C. § 255.

83. Pursuant to 29 U.S.C. § 216(b), Dr. Longshore seeks unpaid minimum wages and

an equal amount in liquidated damages, together with costs and reasonable attorneys' fees.

### NINTH CAUSE OF ACTION
### (Misclassification and Unlawful Cost Shifting in Violation of New York Labor Law §§ 193, 195 & 198)
### *Against All Defendants*

84. Dr. Longshore repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

85. Under New York law a worker is an employee, not an independent contractor, when the putative employer retains the right to control the manner, means, and result of the work.

86. By re-classifying Dr. Longshore as an independent contractor and issuing a Form 1099-NEC, Defendants: Failed to withhold required payroll taxes, thereby shifting their statutory tax burden to Dr. Longshore and effecting an unlawful deduction from wages in violation of NYLL § 193; and Failed to furnish accurate wage statements that itemized hours worked, rates, deductions, and net pay, in violation of NYLL § 195(3).

87. Defendants' conduct was willful and not in good faith.

88. Pursuant to NYLL §§ 198(1-a) and 198(1-d), Dr. Longshore is entitled to: (i) reimbursement of the amounts unlawfully deducted or shifted to him, (ii) liquidated damages equal to 100 percent of those amounts, (iii) statutory damages of $250 per workday (up to $5,000) for the wage-statement violation, and (iv) costs and reasonable attorneys' fees.

### RELIEF

Dr. Longshore demands judgment in his favor and against Defendants GS Institute, Inc. and Goddess Stallings as follows:

A. An award of damages against Defendants, in an amount to be determined at trial to compensate Longshore for all monetary and/or economic damages, including,

  but not limited to, unpaid wages, unlawful deductions, wage-notice and wage-statement statutory damages, and liquidated damages, in amounts to be determined at trial, plus pre-judgment interest;

B.  An award of punitive damages, in an amount to be determined at trial;

C.  Prejudgment interest on all amounts due;

D.  An award of Longshore's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

E.  Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Carrol Longshore demands a trial by jury on all issues so triable of right.

Dated: May 19, 2025
New York, New York

            **RISSMILLER PLLC**

       By:  */s/ Alex Rissmiller*
          Alex Rissmiller
          5 Pennsylvania Plaza, 19th Floor
          New York, NY 10001
          T: (646) 664-1412
          arissmiller@rissmiller.com

          *Attorneys for Plaintiff Carrol Longshore*